**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA,**

**Case No. 4:89cr4037-WS**

**vs.**                                                              **Case No. 4:06cv9-WS/WCS**

**LEONARD DARBY,**

       **Defendant.**

                                     /

## REPORT AND RECOMMENDATION ON § 2255 MOTION

Defendant filed a 28 U.S.C. § 2255 motion and a document addressing the timeliness of the motion.  Docs. 351 and 352.

**Procedural History**

Defendant has filed many requests for relief since the time the judgment was entered and affirmed in 1992.  Docs. 146 (judgment); 232 (mandate issued on January 6, 1992).[1]  Relevant proceedings are discussed in detail ahead, in chronological order.

---

[1] *See* Docs. 262 and 267 (denying motions for resentencing); 268 (denying copies of grand jury proceedings), 270 (denying petition for writ of error coram nobis), 280 (denying motion to modify term of imprisonment), 300 (denying 28 U.S.C. § 2255 motion), 308 (denying motion to reinstate action) 329 (Eleventh Circuit's sua sponte dismissal for lack of jurisdiction, notice of appeal from 1990 judgment was untimely), 331 (denying motion for relief from judgment), 334 (denying motion for redetermination

On January 17, 2001, Defendant filed a motion to modify term of imprisonment under 18 U.S.C. § 3582(c)(2), later clarifying that his claim was based on Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).  Docs. 273 and 276.  The court construed the motion as filed under to 28 U.S.C. § 2255.  While it appeared that the motion was untimely (because the rule in Apprendi had not been made retroactively applicable on collateral review), the court found that any Apprendi error was harmless.  Doc. 278 (report and recommendation, adopted in doc. 280).

On July 17, 2001, the Eleventh Circuit denied as unnecessary Defendant's motion for authorization to file a second or successive 28 U.S.C. § 2255 motion, as Defendant alleged he had not previously filed a § 2255 motion.  Doc. 289.

Defendant filed a § 2255 motion dated August 5, 2001, raising claims under Apprendi.  Doc. 290.

On October 25, 2001, The Eleventh Circuit agreed with this court that Defendant's § 3582 motion had been properly construed as a § 2255 motion, and that it was properly denied.  Doc. 294.  The court cited a (then) recently decided case which held that Apprendi does not apply retroactively on collateral review.  *Id.*, *citing* McCoy v. United States, 266 F.3d 1245, 1256-58 (11th Cir. 2001), *cert. denied*, 536 U.S. 906 (2002).[2]

---

of sentence), and 350 (copies of order and judgment denying habeas corpus relief in 4:04cv126-WS/WCS).  Reconsideration, leave to proceed in forma pauperis on appeal, and for certificate of appealability were denied by this court and the court of appeals. Docs. 264, 284, 288, 294, 312, 315, 318, 320, 322, 328, 332, 339, 346, and 348.

[2] The motion to modify was denied and judgment entered on the docket on May 15, 2001; McCoy was denied on September 25, 2001.

This court addressed the August 5, 2001, § 2255 motion in a report and recommendation on November 15, 2001.  Doc. 297.  It was noted that Defendant raised an Apprendi claim in his motion to modify term of imprisonment, which was construed as a § 2255 motion and found properly so construed on appeal.  Doc. 297, pp. 1-2.  The § 2255 motion was therefore considered a second or successive motion, which the court of appeals had not authorized for filing in this court, "and it has already been determined that Defendant is not entitled to relief under Apprendi."  Id., p. 2.  Over Defendant's objections, the recommendation was adopted.  Docs. 298 and 300.

Defendant filed a request to transfer the § 2255 motion to the court of appeals, a motion to reinstate the § 2255 action, and a motion to supplement authority in support of the motion to reinstate.  Docs. 299, 304 and 305.  The motion to reinstate sought reconsideration of the order denying § 2255 relief,[3] and referenced the Eleventh Circuit's opinion that authorization was not necessary to the extent Defendant had not previously filed a § 2255 motion.  Doc. 304 and attachment (copy of July 17, 2001, opinion).  The motion was denied.  Doc. 308.  Defendant appealed the denial of § 2255 relief, and leave to appeal in forma pauperis and a certificate of appealability were denied by this court and the court of appeals.  Docs. 312, 315, 318, and 320.

Defendant filed a 28 U.S.C. § 2241 petition on April 27, 2004, claiming that he was eligible for parole because his offense was committed prior to November 18, 1988.

---

[3] In his request for certificate of appealability, Defendant said he "filed a timely motion for reconsideration under FRCP-59(e), along with a motion for supplemental authority and motion to transfer to cure jurisdiction."  Doc. 313, p. 1.  His reference to a Rule 59 motion was apparently to the motion to reinstate.

Doc. 1 in 4:04cv126-WS/WCS.  Defendant claimed that he was not charged with any

overt acts committed prior to that date.  *Id.*, p. 4.

The court did not address the merits of the § 2241 petition, but found the proper

vehicle (if any) for raising this claim was by § 2255 motion filed in this district.  Doc. 3 in

that file (report and recommendation).  The undersigned also noted:

> It now appears that, since this court recharacterized a request for
> modification as a § 2255 motion but failed to warn of the consequences of
> this recharacterization, that motion should not have been considered a
> first § 2255 motion for purposes of filing a second or successive motion.
> Castro v. United States, [540 U.S. 375, 382-383], 124 S.Ct. 786, 789, 792-
> 793, 157 L.Ed.2d 778 (2003) (reversing the Eleventh Circuit).  While a
> later motion was actually labeled as a § 2255 motion, it was not addressed
> on the merits but as a second or successive motion.  In hindsight, with the
> benefit of Castro, this was incorrect.

*Id.*, p. 3.

The court did not construe the § 2241 petition as a § 2255 motion, but "[t]o avoid

any confusion in the future," Defendant was advised that he could file a § 2255 motion

in the criminal case and that subsequent motions would be subject to the restrictions on

filing second or successive motions."  *Id.*, pp. 3-4 and n. 2.  Defendant was also advised

that a § 2255 motion might be untimely, and if he filed a § 2255 motion he must address

the timeliness issue.  *Id.*, p. 4.

The report and recommendation was adopted and judgment entered on the

docket on June 14, 2004.  Docs. 5 and 6 in that file (copies of which were docketed as

docs. 350-1 and 350-2 in this file).  Defendant took an appeal and paid the filing fee, but

the appeal was voluntarily dismissed on September 17, 2004.  Docs. 9-12 in that file.

The § 2255 now pending was signed by Defendant on January 2, 2006.

**Legal Analysis**

Whether the court was correct in advising Defendant that he could still file an "initial" § 2255 motion, the current motion should be summarily dismissed.  The undersigned wanted to acknowledge the possibility of prior error in light of <u>Castro</u>, but was perhaps premature (or overly optimistic) in predicting that a future § 2255 motion would not be second or successive.[4]  Dismissal of the current motion is warranted either way, however.  If this is indeed a second or successive motion then it should be summarily dismissed as authorization for filing has not been granted; if it is an initial motion it should be dismissed as it plainly appears that Defendant is not entitled to any relief.  § 2255 Rule 4.

**Timeliness**

The § 2255 motion is untimely.  The one year time limit for filing a § 2255 motion runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

---

[4] The § 2255 motion, while not (in light of <u>Castro</u>) a second or successive motion, was *itself* a § 2255 motion.  While the court said it was second or successive, it also addressed the merits by noting that Defendant raised <u>Apprendi</u> claims and he was not entitled to relief under <u>Apprendi</u>.

§ 2255, ¶ 6.

"In most cases, the operative date from which the limitation period is measured will be the one identified in ¶ 6(1): 'the date on which the judgment of conviction becomes final.'"  Dodd v. United States, 545 U.S. __, 125 S.Ct. 2478, 2481, 162 L.Ed.2d 343 (2005) (quoting § 2255, other citation omitted).  Defendant Darby's conviction was final long before April 24, 1996 (when the limitations period became effective), so – unless a later commencement date applies – he had one year from that date to file a § 2255 motion.  Goodman v. United States, 151 F.3d 1335, 1337 (11th Cir. 1998).

Defendant raises a number of arguments to support his claim that the § 2255 motion is timely.  First, he claims that he filed a motion to dismiss his appeal in the § 2241 case, and that the current motion "is filed within the applicable time from the dismissal of his appeal." Doc. 352, pp. 1-2.  Defendant also claims that "the Court had previously created an impediment, by incorrectly construing Movant's pleadings as § 2255 and or successive petitions.  Accordingly, the Court adversely affected Movant in seeking relief from his unconstitutional sentence and the limitation should be tolled." *Id.*, p. 2.

Accepting either argument does not benefit Defendant, however.  Even if voluntary dismissal of an appeal in another case could somehow toll or commence anew the one year period, or that the court's rulings in this case could toll or commence the one year period (as an illegal impediment to making a motion for purposes of § 2255 ¶ 6(2)), the § 2255 motion is untimely.  On Defendant's own request, the § 2241 appeal was dismissed by the Eleventh Circuit on September 17, 2004.  Doc. 12 in that file.

Case Nos. 4:89cr4037-WS and 4:06cv9-WS/WCS

Assuming no time elapsed *prior* to that date,[5] the one year expired on September 19, 2005 (as September 17, 2005, was a Saturday).  Defendant did not file the § 2255 motion until January 2, 2006, over three months too late.

Defendant also asserts that he "is actually and factually innocent of the sentence imposed, as he was sentence[d] in excess of the authorized maximum permitted by statute."  Doc. 352, p. 2.  Innocence is not mentioned in § 2255 as affecting the possible commencement dates for the one year period, and Defendant does not allege newly discovered evidence to support an actual innocence claim, as might commence the period under ¶ 6(4).  Indeed, he does not allege any facts or evidence to support a claim of actual innocence.  *See* Sibley v. Culliver, 377 F.3d 1196, 1205-06 (11th Cir. 2004) (assuming that the one year period could not be applied against a petitioner who demonstrated actual innocence, the petitioner there failed to make such a showing; his "actual innocence claim is hindered at the outset by a fatal shortcoming – he has not presented any actual evidence to the district court," and did not show entitlement to a hearing on the issue).[6]

---

[5] Accepting the arguments as valid the time would not have commenced any *later* than that date.  The court advised Defendant about filing a § 2255 motion, and of the one year limitations period, by report and recommendation of May 7, 2004, adopted by order entered on June 14, 2004.  Docs. 3 and 5 of that file.  No later than the time he received the order adopting the recommendation, and certainly no later than his voluntary dismissal of the § 2241 appeal, Defendant was aware that this court would not reject a § 2255 motion as second or successive, and that timeliness was an important issue.

[6] "Actual innocence is not itself a substantive claim, but rather serves only to lift the procedural bar caused by [defendant's] failure timely to file his § 2255 motion." United States v. Montano, 398 F.3d 1276, 1284 (11th Cir. 2004) (citation omitted); *see also* Herrera v. Collins, 506 U.S. 390, 400-405, 113 S.Ct. 853, 860-863, 122 L.Ed.2d 203 (1993) ("our habeas jurisprudence makes clear that a claim of 'actual innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner

Instead, it appears Defendant is asserting legal innocence of his sentence under

Apprendi and subsequent cases.  As set forth ahead, any rights newly recognized in

those cases do not apply retroactively on § 2255 review, so they do not afford relief and

fail to commence the time under ¶ 6(3).

Finally, Defendant asserts that his "Article 36 claim came into being on February

12, 2005," the date of a Presidential Executive Order, and so (the argument presumably

goes) the one year ran from that date.  Doc. 352, p. 2.  This is addressed in more detail

infra, as the court looks to the timeliness argument in an attempt to determine the

nature of the claim itself.  An executive order is not a "right ... newly recognized by the

Supreme Court" to trigger the period under ¶ 6(3),[7] nor is it a "fact[] supporting the claim

or claims presented" which could not have been previously "discovered through the

exercise of due diligence" to trigger the period under ¶ 6(4).[8]

---

must pass to have his otherwise barred constitutional claim considered on the merits.")
(collecting cases).  Cf. Dretke v. Haley, 541 U.S. 386, 393-394, 124 S.Ct. 1847, 1852,
158 L.Ed.2d 659 (2004) (declining to answer question of whether actual innocence
exception applies to procedural default of constitutional claim challenging noncapital
sentencing error; court faced with the issue must first address nondefaulted claims and
other grounds asserted as cause).

[7] It is not an action of the Supreme Court at all; moreover the Supreme Court has
not, to date, recognized such a right, as set forth infra.

[8] Assuming it could be a "fact," it could have previously been "discovered" with
due diligence.  Cf. Rivers v. United States, 416 F.3d 1319, 1322-23 (11th Cir. 2005);
Johnson v. United States, ___ U.S. ___, 125 S.Ct. 1571, 1579-82, 161 L.Ed.2d 542 (2005)
(vacatur of state court conviction used in federal sentencing qualifies as a "fact" such
that the defendant's notice of it commences the one year term under § 2255 ¶ 6(4), but
a defendant must show due diligence in seeking vacatur in state court; lack of
sophistication, pro se status, and procedural ignorance were not proper excuses for the
delay).  The opinion prompting the executive order – cited by Defendant Darby – was
decided in 2004 (see infra, pp. 11-12 and n. 9); moreover, the Supreme Court
recognized the potential for a claim years before that.  See Breard v. Greene, 523 U.S.
371, 375-377, 118 S.Ct. 1352, 1355, 140 L.Ed.2d 529 (1998) (noting that the Vienna

### § 2255 Grounds Raised

Regardless of timeliness, the § 2255 motion should be summarily dismissed as it plainly appears Defendant is not entitled to any relief.  § 2255 Rule 4(b).

Defendant makes a number of interrelated claims based on the rationale of Apprendi.  He asserts that he was indicted and convicted under 21 U.S.C. § 841(a), but sentenced under § 841(b)(1)(A), which is a different offense.  Doc. 351, p. 5 (ground one).  He asserts that there was a constructive amendment to the indictment when the court found he was responsible for a quantity of drugs not charged or proved beyond a reasonable doubt.  *Id.* (ground two).  He asserts that the indictment did not give adequate notice of the charge or list the essential elements of the offense, and the grand jury returned the indictment without knowing the elements.  *Id.*, pp. 5-6 (ground three).  Defendant also claims, as one of several instances of ineffective assistance of counsel, that counsel failed to object to the constructive amendment of the indictment.  *Id.*, p. 6 (ground four).  Defendant claims his plea was not knowing and voluntary as he was not properly advised of the statutory penalty, not advised that uncharged facts could be used to enhance his sentence, and not advised that the Government had to prove drug quantity beyond a reasonable doubt.  *Id.*, p. 8 (ground six).

These claims arise under Apprendi and its progeny.  Apprendi, 530 U.S. at 490, 120 S.Ct. at 2362-63 ("[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); Blakely v. Washington, 542 U.S. 296,

---

Convention "arguably confers on an individual the right to consular assistance following arrest," but that default rules applied and claimant would probably have to show prejudice).

124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004) (applying Apprendi to a sentence enhanced under state sentencing guidelines, explaining the term "statutory maximum"); United States v. Booker, 543 U.S. 200, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (applying Blakely to the Federal Sentencing Guidelines).

Defendant is not entitled to relief on the various related claims, as these cases do not apply retroactively on collateral review under § 2255.  McCoy (noted *supra*, holding that Apprendi does not apply retroactively); Varela v. United States, 400 F.3d 864, 867 (11th Cir.), *cert. denied*, __ U.S. __, 126 S.Ct. 312 (2005) (Blakely and Booker do not apply retroactively); In re Anderson, 396 F.3d 1336, 1339-40 (11th Cir. 2005) (the rule recognized in Blakely and Booker has not been "made retroactive to cases on collateral review by the Supreme Court" for purposes of authorizing a second or successive motion under § 2255).

Because they do not apply retroactively, these cases also cannot commence the one year limitations period for filing a § 2255 motion from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  Dodd v. United States, 545 U.S. __, 125 S.Ct. 2478, 2481, 162 L.Ed.2d 343 (2005) (quoting § 2255, ¶ 6(3), holding that a defendant "may take advantage of the date in the first clause of ¶ 6(3) *only* if the conditions in the second clause are met," emphasis added).

Finally, to the extent Defendant raises his Apprendi claims in the context of ineffective assistance of counsel, his claim is baseless.  United States v. Ardley, 273 F.3d 991, 993-994 (11th Cir. 2001) (Carnes, J., concurring in the denial of rehearing en

banc), *cert. denied*, 535 U.S. 979 (2002) (noting "a wall of binding [circuit] precedent

that failure to anticipate a change in the law constitutes ineffective assistance of

counsel. . . . Because our circuit law completely forecloses the contention that an

attorney's failure to anticipate the *Apprendi* decision is ineffective assistance, district

courts are not required to, and should not, hold an evidentiary hearing on that issue.")

(citations omitted).

Defendant also asserts ineffective assistance of counsel as counsel "failed to

consult international treaties."  Doc. 1, p. 6 (ground four).  The § 2255 motion does not

allege what "international treaties" could or should have been examined by counsel.  In

his separate document regarding timeliness, Defendant asserts:

> The Article 36 claim came into being on February 12, 2005, when
> President Bush declared in an executive order that the United States
> would abide by its international obligations and accepted the International
> Court of Justice ruling [ICJ] entered by the Court in **Mexico v. United
> States, (AVENA) ICJ March 31, 2004** .

Doc. 352, p. 2.

Besides alleging that it "came into being," Defendant does identify "[t]he Article

36 claim" or any facts to support such a claim.  The reference is to Article 36 of the

Vienna Convention on Consular Relations, "a 79-article, multilateral treaty written in

1963 and ratified by the United States in 1969."  United States v. Duarte-Acero, 296

F.3d 1277, 1281 (11th Cir.), *cert. denied,* 537 U.S. 1038 (2002); *see also* Cardenas v.

Dretke, 405 F.3d 244, 252 (5th Cir. 2005).  Article 36 provides that, "if he so requests,

the competent authorities of the receiving State shall, without delay, inform the consular

post of the sending State if, within its consular district, a national of that State is arrested

or committed to prison or to custody pending trial or is detained in any other manner."

296 F.3d at 1281 (quoting Article 36).  Article 36 "provides that upon arrest, a foreign

national has the right to contact the consular post of his home country, and that the

arresting authorities must inform the detainee of that right."  Maharaj v. Secretary for

Dept. of Corrections, 432 F.3d 1292, 1304 (11th Cir. 2005) (citing Article 36, footnote

omitted); Cardenas, 405 F.3d at 251.

The Avena decision[9] referenced by Defendant was a proceeding initiated by the

Government of Mexico, claiming that the United States violated the consular notification

provisions of the Vienna Convention for certain Mexican nationals facing the death

penalty.  Cardenas, 405 F.3d at 252.[10]  The ICJ concluded in that case that the United

States had breached its obligations by failing to inform the Mexican nationals of their

rights, failing to notify the Mexican consular post of their detention, and by failing to

enable communication and visitation by consular officers.  *Id.*

Defendant Darby does not say how Article 36 was violated in his case, or what

argument counsel could or should have made.  The Vienna Convention does not create

individually enforceable rights.  Duarte-Acero, 296 F.3d at 1281-82 (quoting the

preamble and collecting cases); Maharaj, 432 F.3d at 1304 ("our precedent . . .

supports the idea that the Vienna Convention does not confer judicially enforceable

---

[9] Case Concerning Avena and Other Mexican Nationals (Mexico V. United States of America), 2004 I.C.J. 128 (March 31, 2004), *available on WestLaw* 2004 WL 2450913.  On February 28, 2005, President Bush issued a memorandum to the Attorney General ordering compliance with that opinion; shortly thereafter the United States withdrew from the Optional Protocol to the Vienna Convention, "thereby removing the United States from the provision of the Vienna Convention that provides jurisdiction to the I.C.J."  Maharaj, 432 F.3d 1292 at 1305 (citing Justice O'Connor's dissent in Medellin, discussed *infra*).

[10] Petitioner Cardenas was one of Mexican nationals involved in the Avena case. 405 F.3d at 252.

*individual rights.*") (emphasis in original, citing <u>Duarte-Acero</u>); see also <u>Cardenas</u>, 405

F.3d at 253 (collecting cases).  Violation of Article 36 does not warrant dismissal of

criminal charges, or suppression of evidence, at least in the absence of prejudice.

<u>Duarte-Acero</u>, 296 F.3d at 1281 and n. 6, 1282 (citations omitted).

> Although our holding in *Duarte-Acero* was limited to the remedy sought in
> that case, which was dismissal of the indictment, the sources we used to
> support that holding seemingly prohibit *any* individual remedy.  The
> Preamble is clear;  the Convention is not intended to benefit individuals.
> The State Department's interpretation of the treaty, which is entitled to our
> respect, is also unambiguous;  the only remedies for a violation of the
> Vienna Convention are diplomatic, political, or derived from international
> law.

<u>Maharaj</u>, 432 F.3d at 1307 (citation omitted).

The Supreme Court granted certiorari to consider whether a federal court is

bound by the ICF's ruling that a Vienna Convention claim be reconsidered without

regard to procedural default, and whether a federal court should give effect to the

judgment of the ICJ.  The Court then dismissed the writ as improvidently granted.

<u>Medellin v. Dretke</u>, 544 U.S. 660, 125 S.Ct. 2088, 161 L.Ed.2d 982 (2005) (per curiam).

The Court noted "several threshold issues that could independently preclude federal

habeas relief," and "[t]hese issues are not free from doubt."  125 S.Ct. at 2090.  The

issues included, *inter alia*, whether a violation of the Vienna Convention is a

nonconstitutional claim which may not be cognizable in habeas corpus, whether <u>Avena</u>

was a new rule which would not apply retroactively on collateral review, and whether the

claim had been properly exhausted.  *Id.,* at 2090-92.

The Court left undecided whether the petitioner there was entitled to relief under

<u>Avena</u>.  Assuming Defendant could allege facts in support of a claim under Article 36

and <u>Avena</u>, and setting aside the threshold issues which "are not free from doubt," Defendant cannot demonstrate that the right asserted "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review" to commence the one year limitations period of § 2255 ¶ 6(3).

Moreover, Defendant raises his claim in the context of ineffective assistance of counsel.  "A convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and must also "affirmatively prove prejudice."  <u>Strickland v. Washington</u>, 466 U.S. 668, 690, 693-694, 104 S.Ct. 2052, 2066-68, 80 L.Ed.2d 674 (1984).  Defendant has not alleged any facts at all, so his claim is insufficient on its face.  It is still unclear whether there is any entitlement to relief in a criminal case for a violation of the Vienna Convention.  It was not unreasonable or incompetent of counsel to fail to predict these legal developments.  <u>Ardley</u>, 273 F.3d at 993-994 (cited *supra*); *see also* <u>Black v. United States</u>, 373 F.3d 1140, 1144 (11th Cir. 2004) (if a legal principle is unsettled, or a reasonable attorney could have concluded that a discussion of unsettled law in an opinion was dictum and not binding authority, failure to raise the issue will not be deemed deficient performance) (citations and footnote omitted) . *Id.*

Defendant also asserts ineffective assistance as counsel "failed to object to movant's sentence on ex post facto grounds."  Doc. 1, p. 6 (ground four).  Defendant alleges that '[a]t the time of the offense" the mandatory minimum under 21 U.S.C. § 841(b)(1)(A) did not apply to § 846 conspiracy offenses, as it did not apply to offenses committed prior to November 18, 1988.  *Id.*, p. 8 (ground five).  Defendant argues that

application of the mandatory minimum, and a term of supervised release rather than special parole, violated the Ex Post Facto Clause.  *Id.*

The Sentencing Guidelines became effective on November 1, 1987, but the non-parole provisions for drug offenses became effective on October 27, 1986.  United States v. Giltner, 972 F.2d 1563, 1565 (11th Cir.1992), *cert. denied*, 508 U.S. 926 (1993); Gozlon-Peretz v. United States, 498 U.S. 395, 409, 111 S.Ct. 840, 849, 112 L.Ed.2d 919 (1991) (supervised release rather than special parole applied to offenses committed between October 27, 1986, and November 1, 1987).[11]

Section 846, as amended effective November 18, 1988, made the penalties for conspiracy the same as the penalties prescribed for the substantive offense, but prior to the amendment the conspiracy was punishable by a penalty not to exceed the penalty prescribed for the substantive offense.  "Prior to the 1988 amendment, a drug conspiracy had the same statutory maximum but not the mandatory minimum punishment applicable to the offense which was the conspiratorial objective."  United States v. Robinson, 883 F.2d 940, 940 (11th Cir. 1989) (finding resentencing necessary).

Conspiracy is a continuing offense, however.  "The ongoing nature of the conspiracy enables application of the new statute without violating the Ex Post Facto

---

[11] "The Sentencing Reform Act of 1984 eliminated special parole and, in its place, established conditions for the new system of supervised release," effective November 1, 1987.  Gozlon-Peretz, 498 U.S. at 397, 111 S.Ct. at 843.  "A year before that date, however, Congress enacted the Anti-Drug Abuse Act of 1986 (ADAA), which mandates terms of supervised release for certain drug offenders."  *Id.*  While some portions of the ADAA had an effective date of November 1, 1987, the supervised release provisions did not, so they became effective on October 27, 1986, the date of enactment.  *Id.*, at 409, 111 S.Ct. at 849.

Clause."  United States v. Futrell, 209 F.3d 1286, 1289-90 (11th Cir. 2000) (citations

omitted, holding that the MVRA applies to an ongoing conspiracy which began before

but continued after the statute's effective date); United States v. Nixon, 918 F.2d 895

(11th Cir.1990) (sentencing Guidelines applied to a conspiracy conviction where the

conspiracy began before but continued after enactment of the Guidelines) (cited in

Futrell).

In this case, "[t]he offense occurred from on or about 1987 through August 3,

1989, therefore, sentencing will be under sentencing guidelines.  Because of the date

the offense was committed, there is a minimum mandatory of 10 years despite the

offense being in violation of 21 U.S.C. 846, however, the much harsher base offense

levels which went into effect November 1989, do not apply."  PSR, ¶ 2.  A chronology of

events during the conspiracy is set forth in ¶ 14 of the PSR.  It begins with Defendant

moving to the Tallahassee and Havana area in late 1987, and ends with Defendant's

arrest on August 15, 1989, with three kilograms of cocaine.

When he entered his plea, Defendant was advised the indictment charged that

from at least by late 1987, and continuing through the return of the indictment in August

of 1989, he was involved in a conspiracy with named and unnamed others to possess

with intent to distribute 50 grams or more of cocaine base.  Doc. 180 (rearraignment

transcript of December 4, 1989), pp. 2-3.  The court explained what a conspiracy was.

*Id.*, p. 13-14.  The Government set forth the facts it would prove at trial, from

Defendant's distribution of crack cocaine until his arrest on August 15, 1989, when three

kilograms of powder cocaine and one kilogram of Benzocaine (commonly used to "cut"

crack cocaine) were found in a search of his vehicle in Wildwood, Florida.  *Id.*, pp. 15-

16.  Defendant said he wanted to plead guilty and was actually guilty, though he did not agree on the total quantity of drugs alleged by the Government.  *Id.*, pp. 3, 13-15, 18-19, 27-29.

At sentencing, there was testimony regarding the conspiracy continuing after November of 1988.   Doc. 179 (transcript of sentencing on February 1, 1990), at pp. 43-44 (testimony of Homer Scruggs that he was in the crack cocaine business from March of 1988 to his arrest in July of 1989, and worked for Defendant the whole time), 76-78 (testimony of Wayne Lovett that he sold drugs for Defendant for a few months in 1987, then resumed in June or July of 1989; before Defendant was arrested he introduced Lovett to his nephew and other guys, and started getting drugs from Defendant's nephew), 95-96 and 117 (testimony of Agent Robert Ayoob that Defendant was arrested in Wildwood with three kilograms of cocaine and one kilogram of Benzocaine on August 15, 1989).

Defendant has not shown that he was not part of the conspiracy after November 1, 1988, that the mandatory minimum did not properly apply to him, or that counsel failed to raise a viable ex post facto claim.  *See* Nixon, 918 F.2d at 906-907 (defendant had not carried burden of showing he had affirmatively withdrawn from the conspiracy before the effective date of the guidelines, so his guidelines sentence was affirmed) (citations omitted).

**Recommendation**

It is therefore respectfully **RECOMMENDED** that Defendant's § 2255 motion, as clarified by the document addressing timeliness (docs. 351 and 352), be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on April 17, 2006.


s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**